## John Sharp *v.* The State.

1. Indictment — Amendment. — An indictment is not subject to amendment as to matter of substance, but may be amended as to matter of form, — as, for instance, in the year stated in the caption of the indictment.

2. Organization of Jury — Special Venire — Service. — The defendant in a capital case is entitled to service of a copy of the list of the names of persons summoned on the special *venire,* but not to a list of talesmen summoned to complete the jury after the *venire* is exhausted.

3. Same — Challenge. — Nor can he complain of being forced to a peremptory challenge, so long as his peremptory challenges enable him to protect himself from objectionable jurors.

4. Evidence. — There was no error in refusing to allow a witness for the defence to testify that certain other men confessed or. intimated to him that they, or some of them, committed the homicide.

5. New Trial. — When matters of fact are involved in the rulings of the court below, such rulings will not be revised by this court unless the facts are verified by proper bills of exception. Statements in a motion for new trial or an assignment of errors are not sufficient.

6. Charge of the Court — Implied Malice. — The charge of the court defined implied malice as " that which the law infers from or imputes to certain acts; thus, the law imputes malice to the killing of a human being, unless the circumstances make it evident that the killing was either justifiable, or, if not justifiable, was so mitigated as to reduce the offence below murder of either the first degree or second degree." *Held,* that, taken in connection with the general definition of malice, accurately given by the court, this was a proper definition of implied malice.

7. Same. — See the opinion for an instruction of the court correctly defining the respective duties of the court and the jury.

8. Homicide — Principal Offenders. — If the accused is shown to have been present, and to have acted with and encouraged others in the com-

mission of homicide, he is deemed a principal in the crime, and may be so convicted, even though it be not shown that he actually fired the fatal shot.

APPEAL from the District Court of Karnes. Tried below before the Hon. H. C. PLEASANTS.

At the June term, 1876, of the Karnes County District Court, this appellant, and three others unknown to the grand jury, were indicted for the murder of one Alfred Cone. Upon trial, he was convicted of murder in the first degree, and the jury, exercising a discretion conferred by the Constitution of 1869, assessed his punishment at confinement in the State penitentiary for the term of his natural life. The opinion discloses the material facts.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WINKLER, J. This appeal is from a conviction of murder in the first degree. The crime having been committed whilst the Constitution of 1869 was in force, and which authorized the proceeding, the jury, under a proper charge by the judge who presided at the trial, exercised their discretion of substitution in lieu of the death penalty, and returned their verdict as follows: "We, the jury, find the defendant guilty of murder in the first degree, and assess the punishment at confinement in the penitentiary for life." Motions for new trial and in arrest of judgment were made and overruled, and final judgment entered in accordance with the verdict of the jury. From the judgment of the District Court this appeal is prosecuted.

Counsel for the appellant have assigned a great many errors, on which apparent reliance is placed for a reversal of the judgment. In fact, it would seem, from the number of the grounds set out in the motions for a new trial and in

arrest of judgment, the several bills of exception to the action and ruling of the judge during the progress of the trial, and the assignment of errors, that every step was objected to, and every proceeding had was faulty and vicious, and that, in the opinion of counsel, every material right of the defendant was disregarded on the trial, and the appellant tried and convicted upon an insufficient indictment, without a sufficiency of evidence, and under erroneous instructions by the court to the jury as to the law of the case. When an attempt, however, is made to specify the supposed errors committed on the trial, and to point them out by bills of exception, the apparent great number of erroneous proceedings are condensed into a manageable compass, and hence we will consider the matters complained of, to the extent deemed necessary, in the order presented by the bills of exception set out in the transcript, under the disadvantage of not being favored with the views of counsel on the interesting questions involved, either in written brief or oral argument.

The error complained of in bill of exceptions No. 1 is to this effect: The district attorney asked leave of the court to amend the caption of the indictment, in that portion which purports to set out the time of the meeting of the court, where the pleader, in stating the time, had written the date as in the year of our Lord *one thousand eighteen* hundred and seventy-six, and the court permitted the clause to be changed and amended so as to read, in the year of our Lord *one thousand* EIGHT *hundred and seventy-six.* The judge, in giving a bill of exceptions to the ruling, appends thereto: "The court caused the minutes of the court to be examined, and from these it was found that an indictment was presented in this court by the grand jury of this county, charging John Sharp with murder, and that the date of this entry in the minutes of the court was the same as that of the file-mark of the indictment proposed to be amended."

Older members of the bar will remember the practice

which obtained, in some localities, at least, to this effect:
When the grand jury had agreed upon an indictment or
report, and in a body appeared before the judge, in open
court, and through their foreman handed their work to the
court, they were asked by the judge this question, in sub-
stance: Gentlemen of the grand jury, do you consent that
these bills of indictment, by you now presented, may be
amended so far as form is concerned, touching no matter of
substance? which was assented to by the grand jury. This
apparently simple question from the judge and answer from
the grand jury embody, in a nutshell, the key to the solu-
tion of all the questions which arise on the subject of amend-
ing indictments, and which have been formulated by the
provisions of the Code of Criminal Procedure and illus-
trated by the decisions of the court, and which amount to
this, and nothing more: what is form may be amended;
what is substance cannot. The duties, respectively, of the
grand jury and of the criminal pleader are defined by the
provisions of the Code of Criminal Procedure, art. 371,
and following. The work of the grand jury is substance,
and cannot be amended, for the obvious reason that neither
the pleader nor the court can perform the duties which de-
volve upon and are confided to the grand jury, and to it
alone; whilst that portion of an indictment which devolves
upon the pleader may, for reasons equally obvious, be
amended, if permission be granted for that purpose at the
proper time and in a proper manner.

What is form and what is substance is defined by the
Code; and also what are the only exceptions, either to the
form or the substance, of which one indicted can avail
himself preliminary to the trial. The exceptions to the
*substance* of an indictment are set out in art. 487; excep-
tions to the *form* of an indictment are stated in art. 488;
and these exceptions may be cured by amendment, as has
been often decided by the Supreme Court, and which has
been followed by this court. *Bosshard* v. *The State*, 25

Texas (Supp.) 207, is in point. There it was held that an indictment may be amended by inserting the court in which it was found, since art. 488 of the Code of Criminal Procedure regards that as mere form. By art. 508 it would seem that an indictment may be amended, so far as form is concerned, whether exception had been taken to it or not. The article is: "When the exception to an indictment or information is merely on account of form, the same shall be amended, if decided to be defective, and the cause proceed upon such amended indictment or information." The amendment was one of form merely, and the court did not err in permitting the amendment.

The case of *Drummond* v. *The State,* 4 Texas Ct. App. 150, cited by counsel for the State, is not in point. There the amendment had reference to the date upon which the offence was charged to have been committed, and it was held to be matter of substance, and not amendable; and correctly so, for the good reason that it was the work of the grand jury in describing the offence, and not, as in the present case, the work of the pleader merely, in putting in form the presentation of the case as found by the grand jury.

The matters complained of in bill of exceptions No. 2 are the following : —

1. On the list furnished the defendant, from which the petit jury was to be selected, was found the name of "Eck Conway," who, when presented and sworn, said his name was *C. A. Conway,* but that he was nicknamed *Eck Conway.* The defendant claimed he ought not to be required to pass upon the juror, on the ground that his name was not on either the special *venire* or on the list served upon him. The objection was overruled, and the defendant excepted.

2. The defendant objected to pass upon the name of another juror because he had served one week during the last preceding term of the court.

3. He objected to pass upon the name of another juror

because he had been summoned for the September term, and had served five days at said term and was excused one day. The objections to these two jurors were overruled; and the bill of exceptions states that the defendant was forced to challenge the jurors peremptorily, to which he excepted.

The judge, before signing the bill of exceptions, made the following explanation: "The jurors Conway, Winink, and Stark (those jurors named in the bill of exceptions) were not on the special *venire*, but were jurors summoned by the sheriff under order of the court, after the special *venire* had been exhausted. The last District Court of this county was held more than six months before the present court commenced, and adjourned more than six months before the present court was begun; and, further, when the jury was selected in this cause, the defendant's challenges were not exhausted." To raise an objection is one thing; to verify the objection by the record is quite another matter. Counsel for an appellant, who seeks an appeal to reverse a judgment, ought to be able to point his finger to the page of the transcript where the error complained of was committed; and not only so, but be able to point out how or in what manner the law has been violated, or the rights of the appellant to a fair and impartial trial have been prejudiced by the action complained of, or not encumber the record with them.

Now, whilst the defendant in a capital felony is entitled to a special *venire*, and to be served with a list of the names of the persons summoned on the special *venire facias*, there is no law which requires that he shall be served with a list of talesmen summoned to complete the panel after the special *venire* shall have been exhausted; nor ought he be heard to complain that he was forced to a peremptory challenge, so long as he has an opportunity to protect himself, by peremptory challenge, from an objectionable juror. By the statement of the true condition of things in the judge's qualification to the bill of exceptions, their frivolity is made

apparent. The court ruled correctly on all the questions set out in bill of exceptions No. 2.

As to the matters complained of in bill of exceptions No. 3, they relate, in the main, to rulings upon the evidence, and generally upon what appear to be minor and unimportant features of the testimony. When the matters complained of are considered in the light of the whole testimony, as set out in the statement of facts, and with which the testimony objected to appears to be in connection, and this taken in connection also with the charge of the court on the subject, we fail to discover any material error committed, or such as called for the granting of a new trial, especially as elucidated by the explanation made by the judge in giving a bill of exceptions to his rulings.

Bill of exceptions No. 4 recites that the court would not allow the defendant to prove the state of feeling between the family of a State's witness and the family of one J. G. Collison; and that the defence offered to ask of a witness for defendant, after the witness had spoken of meeting certain persons at a given time and place, whether these men made any statements, by way of confession, as to the killing of Cone; to which the witness answered, they did. Defendant then asked the witness who, they told him, did the killing; to which the State objected, and the objection was sustained by the court. We are unable to see the materiality or relevancy of the first question, or that the answer would have been either material or relevant. As to the second question, and the answer anticipated, it was probably intended to show some facts tending to show that these four men, or one or more of them, made some confession or gave some intimation that they, or some one of them, or somebody else other than the defendant Sharp, had perpetrated the deed. It was not competent for the defendant to make such proof for such a purpose. *Boothe* v. *The State*, 4 Texas Ct. App. 202; *Walker* v. *The State*, decided at the present term, *ante*, p. 576.

The rule is, that it is not necessary that the evidence should bear *directly* upon the issue. It is admissible, says Mr. Greenleaf, if it *tends* to prove the issue, or constitutes a link in a chain of proof, although alone it might not justify a verdict in accordance with it. 1 Greenl. on Ev., sect. 51. The rule excludes all evidence of all collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute. Id., sect. 52. In view of the fact that it is charged in the indictment that when the assault was made upon the deceased, which ended in his being shot to death, three other persons besides the accused, who were to the grand jurors unknown, were in company with him and participated in the deed, the most favorable light for the defendant in which the testimony, if admissible, could have been regarded, would be to establish the averment in the indictment as to the participation of others in the commission of the crime ; and if it had been offered by the State, it might have been admissible as tending to prove that averment, but when offered by the defendant, it could have served him no valuable purpose to have shown that other persons were jointly guilty with him in the crime. It had no bearing on the question of his guilt or innocence, which was the issue being tried. His guilt or innocence did not depend upon the number of persons engaged with him in its perpetration, under the provisions of our Code in relation to principals in crime. These are the questions raised by bills of exception, and cover, in the main, the grounds set out in the motion for a new trial.

There are, however, other grounds set out in the motion. One is, that the court erred in overruling the defendant's motion for a continuance ; another is, that the court erred in refusing to set aside the special *venire.* These matters will only be inquired into, on appeal, on proper bills of exception ; and, finding none such, we are not permitted, under settled rules of practice, to consider them in deter-

mining the merits of this appeal. "When matters of fact are involved in the rulings of the court below, such rulings will not be revised by this court unless the facts are substantiated by proper bills of exception. Statements in a motion for a new trial or an assignment of errors will not suffice." *Marshall* v. *The State*, 5 Texas Ct. App. 273; Code Cr. Proc., art. 603.

The third, fourth, and fifth grounds of the motion have been disposed of in considering bill of exceptions No. 1. The sixth and seventh grounds of the motion have been disposed of in connection with the bill of exceptions No. 2. The remaining grounds of the motion for a new trial are the eighth, having reference to the charge, and the ninth, that the verdict of the jury is contrary to the law and the evidence.

The objections to the charge are: that the court erred in defining implied malice, and in directing the jury to convict the defendant; and that " the fourth division of the charge is upon the weight of evidence." There is no bill of exceptions to the charge as given, nor were any additional instructions asked, so far as the record discloses. No complaint is made as to the definition of express malice, or the charge on murder in the first degree. The definition of implied malice, as found in the second paragraph of the charge, is as follows: " Implied malice is that which the law infers from, or imputes to, certain acts. Thus, the law implies malice to [from] the killing of a human being, unless the circumstances make it evident that the killing was either justifiable, or, if not justifiable, was so mitigated as to reduce the offence below murder of either the first degree or second degree." The charge on implied malice and on express malice is preceded by a lengthy definition of the general term, and applies to both kinds of malice, except as applied to each by way of distinguishing between the two; and, when taken in connection with this general definition, is an accurate definition of the term, "implied

malice," and sufficiently informed the jury as to what facts and circumstances would justify them in descending from the first degree and convicting of murder in the second degree; if, indeed, the defendant was entitled to a charge on that grade of offence under the proofs adduced.

The objections to the fourth paragraph of the charge, that it directs the jury to convict the defendant, or that it is upon the weight of the evidence, are not sustained by the record. The jury were charged as follows: "If the jury have a reasonable doubt whether the defendant is guilty of murder of either the first degree or the second degree, they should acquit him." We find no error in the charge; at least, none of which the appellant can complain.

Was the verdict of the jury contrary to the law and the evidence? The record answers the question by a decided negative. The witness Patterson appears to have been the only eye-witness to the homicide. After recounting certain matters which occurred on the day and evening previous to the killing, as to certain persons coming to the house for bread, he says that next morning he (the witness) and Cone (the deceased) were in the field, and four men came into the field. One of them — the man who got the bread the evening before — and "this man" (the defendant, whom he had previously pointed out and identified in court) came up in advance of the others, and informed Cone that "that man" had a writ for him. Cone gave up his pistol, and said he would surrender; and then the other men came up, dismounted, and, placing their horses between them and Cone, commenced firing upon Cone; when, the witness says, he ran, and looking back, saw Cone fall. The witness was overtaken by the party, and recognized defendant as one of the party, who spoke to witness, and asked him if he (witness) knew him. Witness told him he did; and defendant told him if he would leave the country, and never let him see him again, he would spare him. Witness

had known defendant about three years; lived near him; had picked cotton with him for several weeks, and was well acquainted with him. Witness promised to leave the country upon condition that they would spare his life. He went to the house, and returned to Cone, and found him not dead. The witness says, when he saw the men coming to himself and Cone, he recognized them as the party who had been at the house the evening before. Three of the men who did the shooting were disguised; the one who came in front of the others was not disguised. They were disguised with handkerchiefs about their faces. Cone and witness were at work in the field of Mr. Dennis when the men came upon them; witness was in the employ of Dennis. He heard four shots, and saw Cone fall. Cone said he would surrender to any one who had a writ for him. When the defendant overtook him he was armed with a Winchester; the others were armed with six-shooters. Defendant held his gun in his left hand, shook hands with witness, and said, "How are you, Jim?" The witness promised the defendant to leave the country, and never to tell it. The companion of the defendant said to the witness, "If you do, we will get you some time." The shots were in quick succession; he could not tell which shot the deceased. He was shot in the head and in the body; witness thought the wounds were from buckshot. Cone lived about two hours after he was shot, and died from the wounds. The field was about half a mile from the house. Witness was overtaken about a hundred yards from where Cone was killed. He was killed about nine o'clock, A. M., on Friday, February 11, 1876, in Karnes County. But one of the other men came near to or spoke to the witness; he recognized none of them but the defendant. Defendant rode a dun horse with a black mane and tail, with a Spanish brand on the left hip; the other man who came up with defendant rode a bay horse. The other men were each armed with guns. The party galloped off in a northerly

direction.   No one was at the house of Dennis the evening before but witness, Dennis, and Cone, whose wife was near Rancho, in Gonzales County.  Witness and Cone were both from that vicinity.  Witness was cooking at the time the men came for bread, and he did not notice the party particularly.

This is substantially the testimony of the only witness to the killing, given on his direct examination, as it is found in the statement of facts.  This witness was subjected to what appears to have been a rigid cross-examination, — all about the men who came for the bread the evening before the homicide, how they were disguised, how armed, and the kind of animals they were riding, what he had formerly stated concerning the facts, and the like, — apparently with the view of discrediting and breaking down his testimony, and preparing the way for the introduction of other testimony for that purpose ; and he was reëxamined apparently to give him an opportunity for explanation.  Other witnesses testified, and in this respect some of them corroborated and others differed as to some of the facts testified to by the witness Patterson ; their testimony involving many matters which to us appear to have been unimportant, irrelevant, and immaterial.  Great latitude appears to have been allowed in the examination of the witnesses.

After the judge had instructed the jury as to the presumption of innocence and the reasonable doubt, and told them if they had a reasonable doubt as to the defendant's guilt they must acquit him, the following appropriate instruction was given as to the respective duties of the judge and the jury, to wit: " The peculiar province of the court is to expound and define the law of the case to the jury, and it is the duty of the jury to determine the guilt or innocence of the defendant from the law thus expounded to them, and from the evidence.  It is the exclusive prerogative of the jury to determine both the credibility of the witnesses and the weight of the evidence ; upon these mat

ters the court is not permitted to intimate even, much less to express, an opinion. The jury should weigh and well consider all the facts which, in their judgment, may be established by the evidence in the cause, and ascertain what, if any, their relation to or dependence upon each other; and it is from the evidence thus considered, and from the law given them by the court, and from no other source whatever, that the jury should avow their conclusions as to the guilt or innocence of the accused.''

From the above testimony, and under the above instruction, the jury determined the defendant guilty of murder in the first degree; and under the provisions of the Constitution in force at the time the crime was committed, and under which the punishment was assessed, they exercised the discretion allowed them, and, in lieu of the death penalty, fixed his punishment at confinement in the State penitentiary for the term of his natural life. The judge before whom the witnesses testified, and who had ample opportunity for observing their manner and bearing whilst on the witness-stand, their means of information, the degree of intelligence they each possessed, and how they stood the test of cross-examination, added his indorsement of the State's witnesses, and, concurring in the verdict, refused to set it aside and award the defendant a new trial. In this we find no such error as would warrant an interference on the part of this court.

In considering the various objections raised to the sufficiency of the indictment, as set out in the motion in arrest of judgment, we fail to discover any defect except the one as to matter of form, already noticed. The only other criticism discoverable upon its face is, that it charges an assault, and the infliction of the injuries of which the deceased died, as having been committed by the defendant, by name, and three other persons who were unknown to the grand jury, and describes the transaction in plain and intelligible language; thus fully apprising the defendant of

the nature of the accusation and the particular fact charged against him, and what he would have to meet on the trial, and enable him to plead the judgment in bar of any other prosecution for the murder of Cone. The concluding paragraph charges the murder, " at the time and place, and in the manner aforesaid," of Alfred Cone upon the defendant, John Sharp, alone.

We are of opinion that, under the law, when applied to the facts proved, the appellant, if guilty at all, — and of this the jury had to decide, — was guilty as a principal offender; he was present and acting with the party who took the life of Cone, and it was not necessary for the State to prove, or the jury to find, whose gun or pistol fired the fatal shot, or whose hand held the murderous weapon. We are of opinion the appellant has been fairly tried and legally convicted, under a valid indictment, upon competent and legal testimony, applied to the law of the case under a proper, fair-minded charge by the judge, and in which, so far as can be determined by the record, the substantial rights of the appellant were properly guarded.

Finding no material error in the proceedings, the judgment of the District Court is affirmed.

*Affirmed.*